## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF IOWA
## CENTRAL DIVISION

| | |
|---|---|
| LLOYD L. LOFTON, III, JOSHUA DILLON BATES, and DANIEL R. WAGNER<br><br>Plaintiffs<br><br>vs.<br><br>STATE OF IOWA, KENNETH KERR, COURTNEY M. KAY-DECKER, BETTY MATHIS and PAUL BENSON<br><br>Defendants, | NO.:  4:17-cv-00301-RGE-CFB<br><br><br>**DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT** |

## TABLE OF CONTENTS

Introduction ........................................................................................................... 2

Summary Judgment Standard ............................................................................... 3

Argument ............................................................................................................... 3

   I.   All Claims Stated Against Defendant Paul Benson in His Individual Capacity are Barred by the Statute of Limitations and Should be Dismissed by This Court.............. 3

   II.   Scope of Employment ............................................................................. 6

      A.   Defendants Kay-Decker, Benson, and Mathis Acted Within the Scope of Their Employment in Their Interactions with Plaintiffs and This Court Should Dismiss All Claims Brought Against Them in Their Individual Capacities. ................................... 6

      B.   Ken Kerr Acted Outside the Scope of His Employment and Is Not Entitled to Defense or Indemnity by the State of Iowa. ............................................................. 10

      C.   The Doctrine of Respondeat Superior Does Not Apply Where an Employee Acts Outside the Scope of His or Her Employment. ................................................. 16

   III.   Plaintiffs Cannot Show Outrageous Conduct Attributable to Defendants Kay-Decker, Benson, Mathis, or the State of Iowa, so This Court Should Dismiss the Intentional Infliction of Emotional Distress Claim Against Them............................. 16

IV.    Plaintiffs Cannot Show That They Qualify for Damages Under a Theory of Negligent Infliction of Emotional Distress Absent an Intentional Tort of Physical Injury. ...................................................................................................................... 18

V.    Plaintiffs' Claims For Invasion of Privacy Against Defendants Kay-Decker, Benson, Mathis, and the State of Iowa Should Be Dismissed Because They Did Not Give Unreasonable Publicity to Plaintiffs' Private Life and They Did Not Unreasonably Intrude Upon Plaintiffs' Seclusion. ................................................................................ 20

VI.    Plaintiffs' Claim Under 42 U.S.C. § 1983 is Barred by the Doctrine of Qualified Immunity. ........................................................................................................................ 24

Conclusion ..................................................................................................................... 28

## INTRODUCTION

In August of 2015, Plaintiff Lloyd Lofton caught Defendant Kenneth Kerr attempting to photograph him in a state of partial undress under the stall in the public restroom at the Iowa Department of Revenue ("IDR"), where both men were employed. Lofton reported the incident to his supervisor.   Investigations conducted by IDR staff and the Iowa Division of Criminal Investigations revealed that Kerr had not only attempted to photograph Lofton without his consent, but that he had engaged in a widespread practice of stalking IDR employees, photographing various men without their consent as they went about their business in the office, taking illicit photographs and videos of his coworkers under the stalls in the public bathroom, and cataloging his disturbing behavior in a detailed journal. Defendants Daniel Wagner and Joshua Bates were other victims of Kerr's behavior.

Plaintiffs' brought this lawsuit as a result of the incident in August 2015 and the events leading up to it, naming the State of Iowa and several IDR supervisors as Defendants. While the State Defendants do not deny that Kerr engaged in illegal

behavior in the workplace, they disagree that they are liable for his criminal conduct, and urge this Court to dismiss Plaintiffs' claims as set forth in further detail below.

## SUMMARY JUDGMENT STANDARD

The court should grant summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord *United States v. Story Cnty.*, 28 F. Supp. 3d 861, 867 (S.D. Iowa 2014). While the Federal Rules of Civil Procedure give "[d]ue deference" to the "rights of litigants to have their claims adjudicated by the appropriate finder of fact . . . equal deference must be given under Rule 56 to the rights of those defending against such claims to have a just, speedy, and inexpensive determination of the action where the claims have no factual basis." *Anderson v. Indus. Elec. Reels, Inc.*, 812 F. Supp. 999, 1002 (D. Neb. 1993). Consequently, summary judgment is appropriate where resolution of a question of law is controlling. *See Ferezy v. Wells Fargo Bank, N.A.*, 755 F. Supp. 1010, 1013 (S.D. Iowa 2010).

## ARGUMENT

### I.   All Claims Stated Against Defendant Paul Benson in His Individual Capacity are Barred by the Statute of Limitations and Should be Dismissed by This Court.

All claims against Paul Benson must be dismissed because Plaintiffs failed to name him as a Defendant in this case within the applicable statute of limitations. Plaintiffs' tort claims were received by the State Appeal Board, pursuant to the procedure outlined in Iowa Code § 669.13(1), on November 7, 2016. *See* Plaintiffs' First Amended Complaint, Docket no. 30, at ¶ 16. In "Attachment A" to their claim documents, Plaintiffs outline their complaints against the State of Iowa and various

state employees, including "Courtney Mikay-Decker [sic], Ken Kerr, & Direct Supervisors." SMF ¶ 72. The narrative portions of Plaintiffs' complaints, as they relate to Mr. Benson, state that "the IDR knew or should have known through the exercise of reasonable care that Ms. Mathis, Mr. Benson, Mr. Hoerr, and Scott Lockwood were inadequately trained and lacked the necessary skills for appropriate supervision, and thus posed a risk of danger to their subordinates." SMF ¶ 72, at ¶ 11. Plaintiffs withdrew their tort claims on July 19, 2017, pursuant to Iowa Code § 669.5, after the six-month statutory waiting period had passed. *See* SMF ¶ 74.

Plaintiffs filed their Petition in the Iowa District Court for Polk County on July 19, 2017, naming the State of Iowa, Kenneth Kerr, Courtney M. Kay-Decker, and Betty Mathis as Defendants. *See* Plaintiffs' Petition at Law and Jury Demand, Docket no. 1. In their Petition, Plaintiffs made several allegations against Benson, including the statement that Benson "informed Plaintiff Wagner on a daily basis that Plaintiff Wagner's 'stalker,' meaning Defendant Kerr, was watching Plaintiff Wagner." *Id.* at ¶ 23. Echoing their tort claim narrative, Plaintiffs also alleged in their initial Petition that "Defendant Kerr's conduct was frequent and occurred over a long period of time. The resulting complaints were such that the State of Iowa knew or should have known through the exercise of reasonable care that Ms. Mathis, Mr. Benson, Mr. Hoerr, and Scott Lockwood were inadequately trained and lacked the necessary skills for appropriate supervision, and thus posed a risk of danger to their subordinates." *Id.* at ¶ 81. It was not until July 6, 2018, nearly a year after Defendants removed this case to federal court, that Plaintiffs moved to amend their Petition to add Paul Benson as a Defendant. *See* Plaintiffs' Motion for Leave to Amend Complaint and Add a Party,

4

Docket no. 28. Plaintiffs filed their First Amended Complaint on July 9, 2018. *See* Plaintiffs' First Amended Complaint, Docket no. 30.

Any claim which is properly brought pursuant to the Iowa Tort Claims Act ("ITCA") must be filed with the director of the Department of Management "within two years after the claim accrued." Iowa Code § 669.13(1). Under the ITCA, a claimant must file his or her lawsuit within six months of the date that a notice of the final disposition of the case is mailed to the claimant, or within six months of the date the claimant withdraws the claim. Iowa Code § 669.13(1). Here, Plaintiffs withdrew their tort claims on July 19, 2017. SMF ¶ 74. As such, they had until January 19, 2018—six months from the date of withdrawal—to file a lawsuit on any claims governed by the ITCA.

Although Plaintiffs timely filed their Petition on July 19, 2017, they did not add Paul Benson as a named defendant until July 9, 2018—nearly six months after the statute of limitations had expired on their tort claims. While certain equitable tolling doctrines, such as the discovery rule, are sometimes applied to toll the statute of limitations in a tort action, Plaintiffs have waived any such arguments here based on a plain reading of their pleadings. *See Vachon v. State*, 514 N.W.2d 442, 445 (Iowa 1994) (explaining that under the discovery rule, a cause of action in a tort claim "does not accrue until a plaintiff discovers the injury or by the exercise of reasonable diligence should have discovered it"). In their tort claim documents, Plaintiffs describe their specific allegations against Benson. They claim that Benson knew Kerr was a stalker and that he failed to act on that knowledge. Plaintiffs repeat their claims in the Petition filed on July 19, 2017. Plaintiffs cannot now assert that their claims against Benson had not yet accrued or that they lacked sufficient knowledge to name him as a defendant in their

original petition. As such, Defendants urge this court to dismiss any and all claims against Paul Benson in his individual capacity as barred by the statute of limitations.

Plaintiffs' claim against Benson under 42 U.S.C. section 1983 is also barred. Section 1983 claims are governed by the relevant state's personal injury statute of limitations. *See Wycoff v. Menke*, 773 F.2d 983, 984 (8th Cir. 1985); Iowa Code § 614.1(2). In Iowa, this means section 1983 claims have a two-year statute of limitations. *Id.* Plaintiffs did not attempt to add Paul Benson as a defendant in this case until nearly three years after Kenneth Kerr was caught filming Lloyd Lofton in the restroom stall, and more than three-and-a-half years after Benson had retired from his position as a supervisor at the Iowa Department of Revenue. *See* SMF ¶¶ 3, 46. As previously described, the very content of Plaintiffs' tort claim documents show they were aware of Benson's allegedly wrongful conduct, and chose to omit him from the lawsuit anyway. Because their delay in naming Benson cannot be excused, the claim against him under 42 U.S.C. section 1983 is barred and must be dismissed.

## II.  Scope of Employment

### A. Defendants Kay-Decker, Benson, and Mathis Acted Within the Scope of Their Employment in Their Interactions with Plaintiffs and This Court Should Dismiss All Claims Brought Against Them in Their Individual Capacities.

Plaintiffs have asserted several state law claims against Defendants Kay-Decker, Benson, and Mathis in their individual capacities. *See* Plaintiffs' First Amended Complaint, Docket no. 30 (Count I (Intentional Infliction of Emotional Distress); Count II (Negligent Infliction of Emotional Distress); Count III (Invasion of Privacy); Count IV (Negligent Retention and/or Supervision); and Count V (Negligent Training, Retention

6

and/or Supervision[1])). However, Plaintiffs cannot show that any acts of Defendants Kay-Decker, Benson, or Mathis were outside the scope of their employment, which would be necessary to support their individual capacity claims. As such, this court should dismiss all state law claims brought against Defendants Kay-Decker, Mathis, and Benson in their individual capacities.

When a state employee commits a tort while acting outside the scope of his or her employment, "the employee is personally responsible for the cost of the defense and any damages he or she may have caused." *Godfrey v. State*, 847 N.W.2d 578, 586 (Iowa 2014). Conversely, an employee who has acted within the scope of his or her employment and who has nevertheless committed a tort shall be defended and indemnified by the State. Iowa Code § 669.21 (1)–(2); s*ee Godfrey*, 847 N.W.2d 578, 586 (Iowa 2014). When an employee commits a tort while acting within the scope of his or her employment, the State must be substituted as the proper defendant. *Id.*

An act which falls within the scope of employment will necessarily be "of the same general nature as that authorized or incidental to the conduct authorized." *Godar v. Edwards*, 588 N.W.2d 701, 705–06 (Iowa 1999). An act is within the scope of employment when "such act is necessary to accomplish the purpose of the employment and is intended for such purpose." *Id.* The appropriate inquiry, then, is "whether the employee's conduct is so unlike that authorized that it is substantially different." *Id.* The court should consider the following factors in making a scope of employment determination:

> (a) whether or not the act is one commonly done by such
> servants;

---

[1] Brought against the State of Iowa and Defendant Kay-Decker only.

(b) the time, place and purpose of the act;

(c) the previous relations between the master and servant;

(d) the extent to which the business of the master is apportioned between different servants;

(e) whether or not the act is outside the enterprise of the master or, if within the enterprise, has not been entrusted to any servant;

(f) whether or not the master has reason to expect that such an act will be done;

(g) the similarity in quality of the act done to the act authorized;

(h) whether or not the instrumentality by which the harm is done has been furnished by the master to the servant;

(i) the extent of departure from the normal method of accomplishing an authorized result; and

(j) whether or not the act is seriously criminal.

*Id.* at 706, citing Restatement (Second) of Agency § 229(2) (1957). The ultimate question in making a scope of employment determination is "whether or not it is just that the loss resulting from the servant's acts should be considered as one of the normal risks to be borne by the business in which the servant is employed." *Id.*, citing Restatement (Second) of Agency § 229 cmt. a (1957).

Plaintiffs' claims against the Defendants in their individual capacities can be divided into several categories. First, Plaintiffs claim that as their employers and supervisors, Defendants Kay-Decker, Mathis, and Benson owed them a legal duty to act with reasonable care in the general training, supervision, and retention of employees. *See* Plaintiffs' First Amended Complaint, Docket no. 30., at ¶¶ 48–49, 68, 70, 72, 75–82, 84. Plaintiffs also allege the Defendants did not wield their power as supervisors to protect employees or to make the workplace safe. *Id.* at ¶¶ 29, 31, 35, 37, 51, 58, 71. Plaintiffs state that the Defendants did not respond to various employee complaints about Kerr as they were required to do in their roles as supervisors. *Id.* at ¶¶ 25, 43, 83. Plaintiffs contend the Defendants should have known about Kerr's behavior, given their

supervisory roles in the office, and that by declining to recognize and stop his behaviors they failed to prevent "future recurrences." *Id.* at ¶ 24. Plaintiffs claim that by retaining Kerr, as was within their discretion as supervisors, the Defendants violated Plaintiffs' rights and caused their damages. *Id.* at ¶¶ 59, 66, 69. Finally, Plaintiffs argue that the Defendants failed to use their supervisory authority to appropriately manage other employees' responses to Kerr's behavior and as such permitted the victims to be mocked and scrutinized. *Id.* at ¶¶ 28, 34, 43.

In sum, each of the alleged acts of misconduct Plaintiffs have described can be properly categorized as falling within the scope of a supervisor's job duties: training, supervising, hiring, and firing employees; ensuring the general safety of the workplace; responding to employee complaints; preventing or navigating employee disputes; and ensuring that employees behave professionally at work. Such acts cannot be said to be "substantially different" than the tasks the individual Defendants were authorized to perform by the State of Iowa. *See Godar v. Edwards*, 588 N.W.2d at 705–06. The acts outlined by Plaintiffs are ones commonly completed by supervisory "servants". *Id.* The acts occurred during the work day on state-owned property. *Id.* The "master", i.e., the State of Iowa, had delegated these managerial tasks to its staff, and the State had reason to believe that its staff would complete them. *Id.* Even if Defendants behaved negligently in performing their management responsibilities, the method of their decision-making did not "depart[] from the normal method of accomplishing an authorized result" and their actions were not "seriously criminal." *Id.*

In its ruling on Defendants' Motion to Dismiss, this court indicated that decisions regarding scope of employment are best left to the factfinder. *See* Order re: State

Defendants' Motion to Dismiss, Docket no. 17, pp. 5–6. Generally, this is true. *See Godfrey*, 847 N.W.2d at 586, citing *Godar v. Edwards*, 588 N.W.2d 701, 706 (Iowa 1999). However, if the conflict at issue involves only the legal consequences of undisputed facts, "the State or an employee may file a motion for summary judgment to resolve this issue." *Godfrey*, 847 N.W.2d at 586, citing *Boelman v. Grinnell Mut. Reins. Co.*, 826 N.W.2d 494, 501 (Iowa 2013). Here, even if all of the facts outlined in Plaintiffs' Amended Complaint are taken as true, Plaintiffs have failed to generate a question of fact on scope of employment. Moreover, no information disclosed in discovery in this case suggests a factual basis for alleging Courtney Kay-Decker, Betty Mathis, or Paul Benson acted outside the scope of his or her employment. This Court should determine that this issue can be resolved on summary judgment and dismiss the individual capacity claims against Defendants Kay-Decker, Mathis, and Benson, leaving the State of Iowa as the proper defendant in all remaining state law claims. *Godfrey*, 847 N.W.2d at 586.

## B. Ken Kerr Acted Outside the Scope of His Employment and Is Not Entitled to Defense or Indemnity by the State of Iowa.

As discussed above, a state employee who commits a tort while acting outside the scope of his or her employment is not entitled to defense and indemnity under Iowa Code § 669.21 and is "personally responsible for the cost of the defense and any damages he or she may have caused." *Godfrey*, 847 N.W.2d at 586. Under *Godar*, an employer will be relieved from liability where the employee's conduct is "substantially different" from the job he or she was hired to perform. *Godar*, 588 N.W.2d at 706. In order to determine whether Kerr's conduct was "substantially different" from that which

he was authorized to do, the court should analyze the facts of this case using the *Godar* factors outlined above.

The Iowa Department of Revenue ("IDR") hired Kerr in 1996 as a Revenue Examiner I. SMF ¶ 19. Kerr held a few other positions during his employment, but spent the bulk of his time as a Management Analyst 2.[2] SMF ¶ 20. In that role, Kerr was charged with reimbursing tax monies to local governments. SMF ¶ 21. More specifically, Kerr's core job functions included "administer[ing] tax laws and collect[ing] and distribut[ing] revenue in compliance with Iowa's tax laws." *Id.* The key activities listed on his annual performance reviews include: "tax processing, collections, policy development, examination, audit, and resolution of disputed tax issues." *Id.* Though not exhaustive, these descriptions of Kerr's basic job duties can provide valuable information about the types of activities that Kerr was authorized to do in the course of his employment.

Plaintiffs outline a portion of Kerr's offensive conduct in their Petition, discovery responses, and deposition testimony. While employed with IDR, Kerr harassed Plaintiff Wagner "during, after, and before work." Amended Complaint, Docket no. 30, at ¶ 19. Kerr "stalked" Wagner "on a daily basis" between March 1997 and July 2015. Amended Complaint, Docket no. 30, at ¶ 20; SMF ¶ 25. Kerr followed Wagner to his home and other off-site locations. Amended Complaint, Docket no. 30, at ¶ 20; SMF ¶ 26. Kerr used his cellphone to record videos or take photographs of Wagner in the IDR public restroom and in other locations around the office. Amended Complaint, Docket no. 30, at ¶¶ 22-23; SMF ¶¶ 27–28. Kerr admits that he photographed Wagner and other

---

[2] Kerr also held the positions of Revenue Examiner 2 and Management Analyst 2.

employees, both in the office setting and in various stages of undress in the public restroom, and kept a detailed log of his stalking and other inappropriate behaviors. SMF ¶¶ 27–28, 34–37. Kerr understood that his behavior was criminal, was charged with multiple crimes after he was caught, and pled guilty to several counts including stalking and invasion of privacy. SMF ¶¶ 38–43. During his deposition, Kerr admitted that he password protected many of the documents detailing his criminal activity because he wanted to hide his behaviors from his employer. SMF ¶ 38. Kerr described his desire to engage in these behaviors at work as an "extension of [his] porn addiction" which served to gratify his sexual urges. SMF ¶ 42.

The acts Plaintiffs outline in their First Amended Complaint are not even arguably related to the tasks Defendant Kenneth Kerr was assigned as a Management Analyst 2. *See* SMF ¶ 21. Indeed, Kerr freely admits that he knew his behavior was criminal and that he attempted to hide it from his coworkers and supervisors. *See* SMF ¶¶ 38–43. In cases involving similarly disturbing behavior both inside and outside the workplace, Iowa courts have ruled that the offender-employee's behavior was outside the scope of employment.

In *Giudicessi v. State*, the Iowa Court of Appeals ruled that a University of Iowa psychiatrist had acted outside the scope of his employment when he pursued a sexual relationship with a former patient. 868 N.W.2d 418 (Iowa Ct. App. Jan. 14, 2015). Though the psychiatrist had initially gained access to the patient by way of his employment, the court determined that the psychiatrist was not acting on behalf of the University in pursuing the relationship, but, like Kerr in the instant case, was seeking a "predominately personal benefit." *Id.* At 424. The court cited evidence that the

psychiatrist understood that he was not acting within the scope of his employment and indicated that he "knew the relationship was inappropriate, but continued to pursue the relationship for his own gratification" *Id.* Ultimately, the court determined that the trial court had erred in finding a genuine issue of fact on the state's liability. *Id.*

Similarly, in *Lindemulder v. Davis County Community School District*, two school employees pursued sexual relationships with the same student. No. 15-0067, 2016 WL 1679835 (Iowa Ct. App. April 27, 2016) (TABLE). The district court dismissed all of plaintiffs' claims on the defendant school district's motion for summary judgment. *Id.* at *3. The plaintiffs appealed the district court's ruling on the issue of scope of employment, claiming that it should have been left for the jury rather than resolved by the court. *Id.* At *9. The Iowa Court of Appeals affirmed the district court's ruling on the scope of employment issue, noting that "there [were] no facts in dispute to generate a jury question." *Id.* at *11. Importantly, the appeals court upheld the district court's refusal to impose liability on the school district simply because the employee had engaged in illegal conduct on school district property. *Id.* The fact that the abuse had occurred on school property and at school events, and that the perpetrators had access to the student victim "by virtue of their official positions with the School District" were not sufficient to determine that the district was liable for its employee's actions. *Id.* At *9.

In a third case, *Benninghoven v. Hawkeye Hotels, Inc.*, a hotel front desk clerk became acquainted with two guests of the hotel through his employment. No. 16-1374, 2017 WL 2684351 (Iowa Ct. App. June 21, 2017) (TABLE). Later, after his shift and away from the hotel premises, the clerk used his earlier acquaintance with the guests to entice

them to lower their guard so that he could attack and rob them. *Id. a*t *1. The Iowa Court of Appeals, reviewing the district court's grant of summary judgment for the defendant hotel, decided that although the hotel had failed to discover various criminal offenses in the clerk's background prior to hiring him, although the hotel as an "innkeeper" is in a special relationship with guests and has a duty to protect them, and although the clerk had used his position at the hotel to gain the guests' trust, he had acted outside the scope of his employment in attacking the men. *Id.* As the court noted in so ruling, the defendant hotel lacked control over its employee's behavior when that employee was not working, and the hotel's decision to employ and retain the clerk did "not encompass the risk that their employee would rob and beat hotel guests while off premises and during his off duty hours[.]" *Id.* Importantly, the court also found that the clerk's acts were "extraneous to the employer's interest, personally motivated, and were not fairly attributable to the hotel business." *Id.* at *6.

Like the offending parties in *Giudicessi*, *Lindemulder*, and *Benninghoven*, Kenneth Kerr gained access to his victims through his employment. Also like the offending parties in the cases discussed above, Kerr's criminal acts cannot be attributed to his former employer under Iowa law. The acts of which Plaintiffs complain were not "commonly done by . . . servants" in Kerr's position; were not undertaken for the purposes of his employer; were not "within the enterprise of the master"; were not similar to the "act[s] authorized" by the master; were a stark "departure from the normal method of accomplishing an authorized result"; and perhaps most importantly, *were* seriously criminal. *See Godar*, 588 N.W.2d at 706. Indeed, the fact that Kerr went to such great lengths to conceal his behavior is evidence that he understood it to be

14

criminal and outside the scope of his normal work duties. The losses resulting from Kerr's actions are not "normal risks" to be borne by the Iowa Department of Revenue in conducting its business. *See id.* Furthermore, the fact that many of the events at issue occurred inside a building owned by the State of Iowa does not result in strict liability for the State Defendant. *See Lindemulder,* No. 15-0067, 2016 WL 1679835 at *9. Conversely, it is the case that the State cannot be held liable for acts which Kerr committed after work or outside the work premises, where it had no knowledge of Kerr's propensity to stalk and did not owe a special duty of care to protect its other employees as they moved about the city. *See Benninghoven,* No. 16-1374, 2017 WL 2684351 at *6.

As noted above, though the question of scope of employment in a tort action is generally for the fact finder, "the State . . . may file a motion for summary judgment to resolve the issue" where "the record reveals a conflict concerning only the legal consequences of undisputed facts." *Godfrey*, 847 N.W.2d at 586, citing *Godar,* 588 N.W.2d at 701; *Boelman v. Grinnell Mut. Reins. Co.*, 826 N.W.2d 494, 501 (Iowa 2013); *Sandman v. Hagan*, 154 N.W.2d 113, 118 (Iowa 1967) ("Although the question of whether an act is within the scope of employment is ordinarily a jury question, depending on the surrounding facts and circumstances, the question as to whether the act which departs markedly from the employer's business is still within the scope of employment may well be for the court."). The facts detailing Kerr's conduct while employed with IDR are undisputed and Kerr admits to committing the majority of offenses of which he is accused. *See* SMF ¶¶ 38–43. As such, the relevant question concerns only the "legal consequences of undisputed facts," and is appropriate for resolution by the court. *See Godfrey*, 847 N.W.2d at 586. Defendants urge the court to

rule that Kerr acted outside the scope of his employment as a matter of law and that he is not entitled to defense or indemnity by the State.

### C. The Doctrine of Respondeat Superior Does Not Apply Where an Employee Acts Outside the Scope of His or Her Employment.

As discussed above, Ken Kerr acted outside the scope of his employment when he engaged in inappropriate and criminal behavior at work. *See supra*, Section II.B. It is well established that under the doctrine of *respondeat superior*, an employer is "liable for the negligence of an employee committed while the employee is acting within the scope of his or her employment." *Giudicessi*, 868 N.W.2d at 421, citing *Jones v. Blair*, 387 N.W.2d 349, 355 (Iowa 1986). The logical inverse compels the conclusion that an employer is *not* liable where its employee's conduct falls *outside* the scope of employment. *Id.* As such, should this Court find that Kerr acted outside the scope of his employment in carrying out the criminal behavior described above, it should also find that the State cannot be vicariously liable for any of his conduct by way of *respondeat superior*.

### III. Plaintiffs Cannot Show Outrageous Conduct Attributable to Defendants Kay-Decker, Benson, Mathis, or the State of Iowa, so This Court Should Dismiss the Intentional Infliction of Emotional Distress Claim Against Them.

Plaintiffs' claims for intentional infliction of emotional distress (IIED) fail because they cannot show that the State Defendants engaged in outrageous conduct. Under Iowa law, a claim for IIED requires four elements of proof: (1) outrageous conduct by the defendant; (2) the defendant intentionally caused, or recklessly disregarded the probability of causing, emotional distress; (3) plaintiff suffered severe

16

or extreme emotional distress; and (4) the defendant's outrageous conduct was the actual and proximate cause of the emotional distress. *Smith v. Iowa State Univ. of Sci. & Tech.*, 821 N.W.2d 1, 26 (Iowa 2014) (citing *Barreca v. Nickolas*, 683 N.W.2d 111, 123-24 (Iowa 2004)). Plaintiffs cannot prove the first element necessary to succeed on their IIED claim against Defendants Kay-Decker, Mathis, Benson, and the State of Iowa.

At the outset, Plaintiffs must establish a prima facie case for outrageous conduct, and "it is for the court to determine in the first instance, as a matter of law, whether the conduct complained of may reasonably be regarded as outrageous." *Id.* (quoting *Cutler v. Klass, Whicher & Mishne*, 473 N.W.2d 178, 183 (Iowa 1991)). For conduct to be considered outrageous, it must be so "extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Van Baale v. City of Des Moines*, 550 N.W.2d 153, 156-57 (Iowa 1996) (citing Restatement (Second) of Torts § 46, cmt. d (1965)) (abrogated on other grounds). Substantial evidence of such extreme conduct is required. *Vaughn v. Ag Processing, Inc.*, 459 N.W.2d 627, 636 (Iowa 1990).

The facts presented by Plaintiffs with respect to Defendants Kay-Decker, Mathis, Benson, and the State of Iowa, even if taken as true, do not reach the level of extreme conduct required for a successful IIED claim. Plaintiffs complain that IDR employees joked about Kenneth Kerr's behavior before and after he was terminated. SMF ¶¶ 62, 64. The only incidents described with any specificity are as follows: Lloyd Lofton claims that when he reported the incident with Kerr to his supervisor, the supervisor laughed; Lofton claims that after the incident on August 11, 2015, an Iowa Department of Revenue employee went by his cubicle and pretended to take a photo underneath it;

17

State Defendant Paul Benson referred to Ken Kerr as Dan Wagner's "stalker" before the incident; and comments that people thought they were gay. SMF ¶¶ 47, 64; Plaintiffs' First Amended Complaint, Docket no. 30, at ¶24. Other comments deemed offensive by the Plaintiffs were made by employees who were also close personal friends of the Plaintiffs, such as Mike Cooper, Sandy Coughlin, Ryan Masters, and Andrew Kane. SMF ¶¶ 63–65. Josh Bates states that he is personally not aware of any offensive behavior towards him related to this incident. SMF ¶ 53.

Plaintiffs' allegations of the State Defendants' conduct do not even approach the requisite level of outrageousness. *See Vinson*, 360 N.W.2d at 118 (stating that "even a deliberate campaign to badger and harass an employee is not considered outrageous behavior.") (internal citations and quotations omitted); *Vaughn*, 459 N.W.2d at 636 (stating that "[e]very unkind and inconsiderate act cannot be compensable.") (internal citations and quotations omitted). For those individuals who were close personal friends with one or more of the Plaintiffs—Andrew Kane, Ryan Masters, Gerald Coughlin, and Mike Cooper—the friendship outside of work factors against Plaintiffs' claims that their behavior was outrageous. *Vinson*, 360 N.W.2d 108, 118 (Iowa 1984); *see* Restatement (Second) of Torts section 46 cmt. e, at 74 ("The relationship between the parties is a significant factor in determining whether liability should be imposed."). As a matter of law, Plaintiffs' allegations of bad behavior are not outrageous, and the IIED claim against the State Defendants must be dismissed.

**IV.    Plaintiffs Cannot Show That They Qualify for Damages Under a Theory of Negligent Infliction of Emotional Distress Absent an Intentional Tort of Physical Injury.**

Plaintiffs' claim for negligent infliction of emotional distress (NIED) fails because State Defendants do not owe a special duty to Plaintiffs that allow for damages for negligent infliction of emotional distress. In Iowa, the general rule is that "emotional distress damages are not recoverable in torts absent intentional conduct by a defendant or some physical injury to the plaintiff." *Miranda v. Said*, 836 N.W.2d 8, 14 (Iowa 2013) (internal quotations omitted). While this rule generally recognizes there is no duty in tort law to avoid causing emotional harm, an exception exists where a duty arises because it is "supported by the nature of the relationships between the parties and the nature of the acts engaged in by the defendant within the context of the relationship."[3] *Id.* (citing *Oswald v. LeGrand*, 453 N.W.2d 634, 639 (Iowa 1990)). More specifically, recovery under this exception is only allowed when (1) the defendant's acts are so coupled with matters of mental concern, solicitude, or the sensibilities of the plaintiff to whom a duty may be owed that breach of that duty will necessarily or reasonably result in mental anguish or suffering, and (2) it is known to both parties from the nature of the obligation that such suffering will result from its breach. *Id.*

Iowa cases that have allowed NIED claims to go forward usually involve parties engaged in sensitive relationships fraught with emotion, where breach of any duty is reasonably expected to cause emotional distress. *See e.g. Miranda*, 836 N.W.2d at 33 (allowing emotional distress damages for an immigration attorney's negligence that resulted in prolonged family separation, a result that was reasonably foreseeable);

---

[3] A plaintiff personally witnessing the negligent infliction of a serious injury to a close relative, also called the bystander exception, is another exception to this general rule, although it is not at issue in this case. *See Barnhill v. Davis,* 300 N.W.2d 104, 108 (Iowa 1981).

*Oswald*, 453 N.W.2d at 639 (allowing an NIED claim in a medical malpractice claim involving a pregnant woman and her premature fetus); *Meyer v. Nottger*, 241 N.W.2d 911, 920 (Iowa 1976) (allowing an NIED claim for a breach of contract involving funeral services).

Plaintiffs claim that the State Defendants' negligent performance as supervisors and managers at IDR caused them emotional distress. Plaintiffs' First Amended Complaint, Docket no. 30., ¶¶ 47–54. While Iowa courts have recognized that an employee may be entitled to more protection from insulting or abusive treatment from an employer than would be expected between two strangers, these cases involved IIED claims, and the analysis focused on whether specific behavior could be considered outrageous within an employer-employee relationship. *See Smith*, 821 N.W.2d at 28; *Blong v. Snyder*, 361 N.W.2d 312, 316 (Iowa App. 1984). While the nature of parties' relationship in this case is more personal than that between two strangers, it is not the same as a person might have with their immigration attorney, healthcare provider, or someone providing funeral services for a loved one. So, too, the claims of negligent supervision, hiring, or training complained of here are not the kinds of acts that inherently couple with the mental concern, solicitude, or sensibilities of the Plaintiffs, nor would it be reasonably foreseeable that any breach in these duties would result in Plaintiffs' mental anguish or suffering.  Consequently, Plaintiff's claims for NIED fails as a matter of law.

**V.    Plaintiffs' Claims For Invasion of Privacy Against Defendants Kay-Decker, Benson, Mathis, and the State of Iowa Should Be Dismissed Because They Did Not Give Unreasonable Publicity to Plaintiffs'**

**Private Life and They Did Not Unreasonably Intrude Upon Plaintiffs'
Seclusion.**

Iowa law recognizes four forms of an invasion of privacy claim, as adopted from
the Restatement (Second) of Torts § 652A (1977). *Koeppel v. Speirs*, 808 N.W.2d 177,
181 (Iowa 2011). These four forms are: (1) "unreasonable intrusion upon the seclusion of
another," (2) "appropriation of the other's name or likeness," (3) "unreasonable
publicity given to the other's private life," and (4) "publicity that unreasonably places
the other in a false light before the public." *Id.* (quoting the Restatement (Second)
Torts). As explained above, the State Defendants are not vicariously liable for Defendant
Kerr's acts of "unreasonable intrusion upon the seclusion of another." Plaintiffs' only
other plausible claims for invasion of privacy against State Defendants fail as a matter of
law.

As noted above, the Iowa Supreme Court has adopted the principles of invasion
of privacy as stated in the Restatement (Second) of Torts (1977). *See In re Marriage of
Tigges*, 758 N.W.2d 824, 829 (Iowa 2008); *see also Howard v. Des Moines Register
and Tribune Co.*, 289, 301 (Iowa 1979) (stating that "[b]ecause we have adopted the
Restatement definition of the invasion of privacy tort, it is reasonable to refer to the
Restatement explanation of its elements."). In Iowa, "[o]ne who gives publicity to a
matter concerning the private life of another is subject to liability to the other for
invasion of his privacy, if the matter publicized is of a kind that (a) would be highly
offensive to a reasonable person, and (b) is not of legitimate concern to the public."
*Winegard v. Larsen*, 260 N.W.2d 816, 823 (Iowa 1977) (citing Restatement (Second) of
Torts § 652D).

Under the Restatement, publicity means that "the matter is made public by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." Restatement (Second) of Torts § 652D, cmt. a. Communicating a fact about a plaintiff's private life to a small group of persons is not considered an invasion. *Id.*; *but see Hill v. MCI WorldCom Commc'ns, Inc.*, 141 F.Supp.2d 1205, 1212-13 (S.D. Iowa 2001). Moreover, the rule stated in § 652D does not apply "when the defendant merely gives further publicity to information about the plaintiff that is already public." Restatement (Second) of Torts § 652D, cmt b.

In their First Amended Complaint, Plaintiffs claim that an Iowa Department of Revenue employee disclosed to other employees private and confidential information regarding Defendant Kerr's behavior towards Plaintiffs. *See* Plaintiffs' First Amended Complaint, Docket no. 30, at ¶¶ 27, 33, 39. The record shows that the employee alleged to have publicized confidential information shared it with relatively few people—one of whom was Lloyd Lofton himself—and the information shared about the workplace investigation into Defendant Kerr was limited in scope. SMF ¶¶ 57, 57. At most, Plaintiffs claim that the information shared with employees was some kind of description of a rating system Ken Kerr created about some employees. SMF ¶ 58.  More specifically, Lofton is not aware of this employee sharing information specifically about the Plaintiffs with other employees beyond himself. *Id.* Josh Bates has no knowledge of any private facts about the Plaintiffs shared by this employee. SMF ¶ 56. Plaintiffs' own lack of awareness of what was even shared by the employee shows that the limited disclosure of information could not have been broad enough to constitute publicity. In

22

sum, Plaintiffs cannot show that any disclosure of confidential information about them met the publicity requirement.

Moreover, Lloyd Lofton admits that he freely shared information about the investigation into Kerr's misconduct with other employees. SMF ¶ 61. Plaintiffs' own disclosure of personal information to other employees shows that the information was not only already publicly available but also cannot be considered highly offensive to a reasonably person.

Plaintiffs also complain that the State Defendants are liable for invasion of privacy for "allowing a place where peepholes in the bathroom stalls are acceptable and a place where females can walk in unannounced" but this claim also fails as a matter of law. *See* Plaintiffs' First Amended Complaint, Docket no. 30, at ¶¶ 29, 35. In Iowa, a claim for invasion of privacy for an unreasonable intrusion upon seclusion requires two elements: (1) "an intentional intrusion into a matter the plaintiff has a right to expect privacy," and (2) the act is "highly offensive to a reasonable person." *Keoppel*, 808 N.W.2d at 181. Plaintiffs cannot meet the first element of the tort because there is no evidence to support the claim that any State Defendant intentionally intruded upon their seclusion. *See Id.* at 186 (holding that an invasion of privacy could occur when defendant secretly placed an electronic device in the restroom if it was capable of recording); *In re Marriage of Tigges*, 758 N.W.2d at 829 (finding that defendant's admission to covertly installing video cameras in plaintiff's bedroom was an intentional intrusion).

Plaintiffs' complaints of "peepholes" in the restrooms refer to small holes left in some stalls resulting from the installation of new hardware for toilet dispensers. SMF ¶

66. At most, some of these holes are slightly larger that the diameter of a dime. *Id.* Plaintiffs do not claim that these holes were ever used to invade someone's privacy, nor do they. Plaintiffs do not claim that these holes were created for the purpose of invading someone's privacy.

Plaintiffs' complaint that their privacy is invaded because a female can walk in unannounced in the restroom is similarly lacking. *See* Plaintiffs' First Amended Complaint, Docket no. 30, at ¶¶ 29, 35.  Lloyd Lofton claims that a female janitor employed by the state has walked into the men's restroom in order to clean it. SMF ¶ 68. He does not claim that she came in for any purpose other than cleaning the restroom, and also states that he believes that particular janitor is no longer employed by the state. SMF ¶ 69. Plaintiffs' claim for intentional intrusion fails as a matter of law because it is not supported by evidence that anyone has actually intentionally intruded upon them or even that they could reasonably believe an intrusion has occurred. *See Koeppel*, 808 N.W.2d at 185 (stating that a harm from intrusion arises when a plaintiff reasonably believes an intrusion has occurred but there is not tort if there is no injury.)

## VI.    Plaintiffs' Claim Under 42 U.S.C. § 1983 is Barred by the Doctrine of Qualified Immunity.

Plaintiffs' section 1983 claim is barred by qualified immunity. Qualified immunity is a defense available to state officials and employees under 42 U.S.C. section 1983, and the doctrine of qualified immunity "shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). Courts have

24

discretion to decide which two prongs of the qualified-immunity analysis to address first. *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). A government official's conduct violates clearly established law when, at the time of the challenged conduct, "[t]he contours of [a] right [are] sufficiently clear" that every "reasonable official would have understood that what he is doing violates that right." *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

In *White v. Pauly*, 580 U.S. ____, ____, 137 S. Ct. 548, 551–52 (2017), the United States Supreme Court reiterated, in a Per Curiam opinion, its broad view of the doctrine of qualified immunity:

> Qualified immunity attaches when an official's conduct "'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" While this Court's case law "'do[es] not require a case directly on point'" for a right to be clearly established, "'existing precedent must have placed the statutory or constitutional question beyond debate.'" In other words, immunity protects "'all but the plainly incompetent or those who knowingly violate the law.'"

> In the last five years, the Court has issued a number of opinions reversing federal courts in qualified immunity cases. The Court has found this necessary both because qualified immunity is important to "'society as a whole,'" and because as "'an immunity from suit,'" qualified immunity "'is effectively lost if a case is erroneously permitted to go to trial.'"

> Today, it is again necessary to reiterate the longstanding principle that "clearly established law" should not be defined "at a high level of generality." As this Court explained decades ago, the clearly established law must be "particularized" to the facts of the case. Otherwise, "[p]laintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply be alleging violation of extremely abstract rights."

> The panel majority misunderstood the "clearly established" analysis: It failed to identify a case where an officer acting under similar circumstances as Officer White was held to have violated the Fourth Amendment. . . .

(Internal citations omitted).

Plaintiffs' First Amended Complaint alleges that "acts and omissions" on the part of State Defendants deprived Plaintiffs of their right to privacy under the First, Fourth, Fifth, and Fourteenth Amendments of the United States. *See* Plaintiffs' First Amended Complaint, Docket no. 30, at ¶ 89. But Plaintiffs fail to allege with any particularity what those acts and omissions actually were with regards to the supposed constitutional violations of privacy rights and how those acts could be characterized as a violation of "clearly established law." *Ashcroft* 563 U.S. at 742 (finding that courts should not define clearly established law at a high level of generality and stating, as an example, that the general proposition "that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established").

Here, Plaintiffs cannot show State Defendants Kay-Decker, Mathis, or Benson knowingly violated any clearly established federal law in violation of Plaintiffs' constitutional rights. *Malley v. Briggs* 475 U.S. 335, 341 (1986) (stating qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law"); *Mitchell v. Forsyth*, 472 U.S. 511, 528 (1985) (holding that officials are immune unless the law "clearly proscribed" the actions they took). At worst, the facts show the following acts and omissions for which Defendants Kay-Decker, Mathis, and Benson are responsible: (1) Kay-Decker was the Director of a State agency with a custom of allowing for violations of privacy, including issues with the men's restrooms that have since been

26

remedied; (2) Mathis and Benson were negligent in having failed to report allegations and evidence of misconduct committed by Kerr, which if reported, would have resulted in an earlier investigation into Kerr's behavior; (3) Benson personally joked and harassed Dan Wagner about Kerr's behavior towards him; and (4) all three were supervisors in a State agency that allowed employees to laugh at, mock, and publicly disseminate confidential information about coworkers. SMF ¶¶ 2, 15–18, 30, 56–69.

But even if Defendants were not entitled to qualified immunity, "[l]iability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability of the supervisory defendants, [the plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights." *Mayorga v. Missouri,* 442 F.3d 1128, 1132 (8th Cir.2006) (internal quotations and citations omitted). Here, there was no personal involvement by Kay-Decker, Mathis, or Benson in any deprivation of Plaintiffs' Constitutional right to privacy. In reality, what Plaintiffs are attempting to do is hold Kay-Decker, Mathis, and Benson liable under 42 U.S.C. § 1983 for the conduct of others—notably, Megan Richmond, who was fired for having leaked confidential information, and Defendant Kerr, who, as described above, was acting outside of the scope of his employment and therefore was not acting under the color of law. *See West v. Atkins*, 487 U.S. 42, 49 (1988) ("The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"). There is also no claim in this case for section 1983 liability

based on governmental custom, pursuant to *Monell v. New York City Dept. of Social Servs.,* 436 U.S. 658 (1978).

As State Defendants previously argued, dismissal of Plaintiffs' § 1983 claim is appropriate unless Plaintiffs can identify a case where a government employee acting under similar circumstances to the ones Plaintiffs assert here was held to have violated a plaintiff's privacy rights under the United States Constitution. Plaintiffs' reliance upon a broad conception of their Constitutional right to privacy is insufficient in the context of their claim against government officials under 42 U.S.C. § 1983.

## CONCLUSION

Based upon the foregoing authority and factual record, Defendants' motion for summary judgment should be granted.

THOMAS J. MILLER
Attorney General of Iowa

/s/ Nicholas E. Siefert
NICHOLAS E. SIEFERT

/s/ *Kayla Burkhiser Reynolds*
KAYLA BURKHISER REYNOLDS

Assistants Attorney General
nick.siefert@ag.iowa.gov
kayla.burkhiser@ag.iowa.gov
Hoover State Office Building
Des Moines, Iowa 50319
Telephone: (515) 281-6665
Fax: (515) 281-4902
ATTORNEYS FOR STATE OF IOWA,
COURTNEY M. KAY-DECKER,
BETTY MATHIS, and PAUL BENSON