# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

| | |
|---|---|
| LLOYD L. LOFTON, III, JOSHUA DILLON BATES, and DANIEL R. WAGNER, | NO. 4:17-cv-00301-RGE-CFB |
|      Plaintiffs, <br><br> v. <br><br> STATE OF IOWA, KENNETH KERR, COURTNEY M. KAY-DECKER, and BETTY MATHIS, <br><br>      Defendants. | **PLAINTIFF LLOYD L. LOFTON, III, JOSHUA DILLON BATES, AND DANIEL R. WAGNER'S MOTIONS IN LIMINE** |

COMES NOW, Plaintiffs Lloyd Lofton, Joshua Bates, and Daniel Wagner, in their individual capacity, by and through counsel, and hereby move the Court for an Order to prohibit Defendants, their witnesses and their attorneys from making any statements, giving any evidence, or asking any questions during opening statements, during presentations of the evidence, or during closing arguments, relating to topics identified below. In support thereof, Plaintiffs state as follows:

### *MOTION IN LIMINE* NO. 1

### (To exclude text messages between Daniel R. Wagner and Kenneth Kerr)

1.     Defendant should not be allowed to introduce text messages between Dan Wagner and Kenneth Kerr because such evidence is unreliable and cannot be authenticated. Fed. R. Evid. 901. To satisfy the requirement of authentication, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901. The 8th Circuit has held that to authenticate an exhibit "a party need only prove a rational basis for that party's claim that the document is what it is asserted to be." *Perzynski v. Cerro Gordo*

*Cty., Iowa*, 291 F.R.D. 157, 159 (N.D. Iowa 2013). Here, Defendant does not meet the requirements needed under FRE 901 to admit the text messages because Defendant, himself, admits that the text messages are not a complete and accurate representation of his text messages with Dan Wagner.

2.      The messages between Dan Wagner and Ken Kerr are unreliable because Kerr uploaded the messages from his phone to the computer with unknown software. (Exhibit 1, Kerr Dep. Vol. 2, p. 21). Defendant Kerr has no recollection of the software he used to upload the messages from his phone. (Exhibit 1, Kerr Dep. Vol. 2, p. 47). Without the name of the software, the reliability of the software cannot be ascertained. Therefore, there is no way of knowing if the application created an accurate and reliable transcript of the messages between Wagner and Kerr.

3.      The text messages provided cannot be authenticated because it is difficult to determine what text messages are from Dan Wagner. The software used to upload the text messages uploaded individual messages and group text messages together, without differentiating between the two types of messages. (Exhibit 1, Kerr Dep. Vol. 2, pp. 28, 31, 37). The messages are also incomplete because the application did not upload any pictures. (Exhibit 1, Kerr Dep. Vol. 2, pp. 31, 35). Defendant Kerr admits that the text conversations are not an accurate representation of the original messages because he does not know if the messages came from a group text or solely from Dan Wagner. (Exhibit 1, Kerr Dep. Vol. 2, p. 28).

4.      The messages are unreliable because Defendant Kerr admits to deleting text messages from his phone before using the software to upload the text messages. (Exhibit 1, Kerr Dep. Vol. 2, p. 23). Consequently, it is not possible to know which text messages were deleted prior to Kerr uploading them to his computer. (Exhibit 1, Kerr Dep. Vol. 2, p. 40). The following

are examples of dates that Defendant Kerr admits to having deleted text messages from his

phone:

    a.   Defendant Kerr admits to having deleted messages and pictures from April 10th to

         April 12, 2012. (Exhibit 1, Kerr Dep. Vol. 2, p. 24).

    b.   Defendant Kerr then admits to having deleted text messages on May 4, 2012. (Exhibit

         1, Kerr Dep. Vol. 2, p. 27).

    c.   Then again, from May 21st to May 22, 2012, Defendant Kerr does not know if the

         messages were deleted or if Wagner even responded. (Exhibit 1, Kerr Dep. Vol. 2, p.

         30).

    d.   Kerr again admitted to having deleted messages on his phone on September 28, 2012.

         (Exhibit 1, Kerr Dep. Vol. 2, p. 35).

    5.     For these reasons, the text messages between Dan Wagner and Ken Kerr cannot

be authenticated and should be excluded.

## *MOTION IN LIMINE* NO. 2

### (Exclude any evidence that is not based upon personal knowledge.)

    1.     This court should exclude any evidence that is not based on personal knowledge.

Under Federal Rule of Civil Procedure 602, "A witness may testify to a matter only if evidence

is introduced sufficient to support a finding that the witness has personal knowledge of the

matter." Fed. R. Civ. P. 602. It is well settled that a lay witness may only testify about matters

within his or her knowledge. *Kemp v. Balboa*, 23 F.3d 211, 213 (8th Cir. 1994); *see also El Deeb*

*v. Univ. of Minnesota,* 60 F.3d 423, 428 (8th Cir. 1995) ("Affidavits asserting personal

knowledge must include enough factual support to show that the affiant possesses that

knowledge.").

2.      For example, Supervisor Benson, Mathis, Peterson, Hoerr, Roisen, Holmes, and

Kay Decker's testimony about the relationship between Dan Wagner and Ken Kerr should be

excluded because it is based on weak assumptions and a lack of personal knowledge. The

following shows how Supervisors Benson, Mathis, Hoerr, Roisen, Holmes, Peterson, and Kay

Decker do not have personal knowledge about the nature of the relationship between Dan

Wagner and Ken Kerr.

    a.   Paul Benson admits that he does not know for a fact that Wagner and Kerr were

        friends. (Exhibit 2, Benson Dep., p. 30). He states, "I don't know if Dan considered

        Ken a friend, and I don't know if Ken considered Dan a friend." (Exhibit 2, Benson

        Dep., p. 92). Accordingly, his statements pertaining to the relationship between

        Wagner and Kerr are based on assumptions with no personal knowledge and should

        be excluded.

    b.   Betty Mathis also states that she made assumptions about Kerr and Wagner's

        friendship, but has no personal knowledge as to whether they were actually friends.

        (Exhibit 3, Mathis Dep., p. 82). Mathis agreed that she never figured out the actual

        context of Wagner and Kerr's relationship. (Exhibit 3, Mathis Dep., p. 82). Thus,

        Betty Mathis's testimony about the relationship between Wagner and Kerr should

        also be excluded.

    c.   Courtney Kay-Decker's testimony was that she has no "firsthand knowledge" of the

        relationship between Kerr and Wagner. (Exhibit 4, Decker Dep., p. 111). Her

        assumptions are based on a reading of second-hand documents and no actual

        observations of the interactions between Wagner and Kerr. *Id*. Further, Courtney

        Kay-Decker admits that she would not be able to testify at trial as to whether Wagner

and Kerr were friends. *Id.*  Therefore, any testimony by Courtney Kay-Decker about the perceived friendship between Wagner and Kerr should be excluded due to a lack of personal knowledge.

d.  Supervisor Julie Roisen's testimony was that she has "no idea" whether Defendant Kerr had any friends at work. (Exhibit 5, Roison Dep., p. 38). Therefore, any testimony by Julie Roisen about any type of relationship between Wagner and Kerr should be excluded due to a lack of personal knowledge.

e.  Supervisor Marsha Peterson admits that just because a person goes to lunch with someone does not mean that there is a friendship. (Exhibit 6, Peterson Dep., p. 86). Peterson states that she made an assumption about Wagner and Kerr's relationship with no actual knowledge of whether the two were friends. (Exhibit 6, Peterson Dep., p. 181). Peterson states, "I do not know that Dan and Ken were friends" and she is not able to testify whether or not they were friends. (Exhibit 6, Peterson Dep., p. 184). Any statements by Peterson about the nature of Kerr and Wagner's relationship should also be excluded for lack of personal knowledge.

f.  Supervisor Samuel Hoerr, states that he is not sure as to whether Wagner and Kerr were friends. (Exhibit 7, Hoerr Dep., p. 90). Hoerr based his assumptions about Wagner and Kerr on seeing the two go to lunch once and hearing that they had gone golfing once. (Exhibit 7, Hoerr Dep., p. 92). Hoerr also admits that just going to lunch with someone does not make you friends. (Exhibit 7, Hoerr Dep., p. 95). Therefore, any testimony by Samuel Hoerr about the perceived friendship between Wagner and Kerr should be excluded due to a lack of personal knowledge.

3.      For these reasons, any testimony or evidence that is not based on personal

knowledge should be excluded.

## *MOTION IN LIMINE* NO. 3

**(To exclude text message between Joshua Bates and Lloyd Lofton as inadmissible hearsay)**

1.      Evidence that constitutes hearsay is also inadmissible except as provided by

statute, by the rules of evidence, or by other rules of the Supreme Court. Fed. R. Evid. 802.

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or

hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801. A

"statement" is defined as "(1) an oral or written assertion or (2) nonverbal conduct of a person, if

it is intended by the person as an assertion." *Id.* The question of whether a particular statement

constitutes hearsay is a legal issue for the court. Hearsay must be excluded as evidence at trial

unless admitted as an exception or exclusion under the hearsay rule or some other provision.

2.      Here, the text message in which Josh and Lloyd were a party to the conversation

found in Deposition Exhibit 5 should be excluded because the messages are inadmissible

hearsay.

3.      For these reasons, any text messages between Joshua Bates and Lloyd Lofton

should be excluded.

By:   /s/ Melissa A. Schilling
Melissa A. Schilling, AT0010487
DICKINSON, MACKAMAN, TYLER & HAGEN, P.C.
699 Walnut Street, Suite 1600
Des Moines, Iowa  50309-3986
Telephone:  (515) 244-2600
FAX:  (515) 246-4550
mschilling@dickinsonlaw.com

ATTORNEY FOR PLAINTIFFS LLOYD L. LOFTON,
III, JOSHUA DILLON BATES, and DANIEL R.
WAGNER

## CERTIFICATE OF SERVICE

I hereby certify that on October 11, 2019, I electronically filed the foregoing document

with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic

filing to the following:

> Jeffrey S. Thompson
> Nicholas E. Siefert
> Hoover State Office Building
> Des Moines, IA 50319
> Jeffrey.thompson@iowa.gov
> Nick.siefert@iowa.gov
>
> *Attorneys for State of Iowa, Courtney M. Kay-Decker and Betty Mathis*
>
>
> Kent A. Gummert
> LEDERER WESTON CRAIG, PLC
> 4401 Weston Parkway, Suite 212
> West Des Moines, IA 50266
> Telephone: (515) 244-3911
> Email: kgummert@LWCLawyers.com
>
> *Attorneys for Defendant Kenneth Kerr*


I further certify that I mailed the foregoing document and the notice of electronic filing

by first-class mail to the following non-CM/ECF participants:

> None


> */s/ Claire R. Warner*
> Claire R. Warner